IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MASONRY INDUSTRY TRUST ADMINISTRATION, INC.**, an Oregon corporation; **TRUST AND TRUSTEES OF THE NORTHWEST BRICKLAYERS PENSION TRUST FUND**; **BRICKLAYERS INTERNATIONAL PENSION FUND**; **MASONRY WELFARE TRUST FUND**; **APPRENTICE AND JOURNEYMAN TRAINING TRUST FUND**; **MASONRY VACATION TRUST FUND, AND ALL AFFILIATED FUNDS**; and **BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL NO. 1**, | Case No. 3:23-cv-00627-IM<br><br>**OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT** |
| Plaintiffs, | |
| v. | |
| **BROKEN STONE MASONRY, LLC**, a Montana limited liability company, | |
| Defendant. | |

Bradley L. Middleton, Bradley L. Middleton, P.C., 6950 SW Hampton Street, Suite 250, Tigard, OR 97223. Attorney for Plaintiffs.

PAGE 1 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT

**IMMERGUT, District Judge.**

In this case, Plaintiffs, Masonry Industry Trust Administration Inc. and several trust funds it administers, accuse Defendant Broken Stone Masonry, LLC of violating the Employee Retirement Income Security Act of 1974 ("ERISA"). Before this Court are Plaintiffs' Motion for Default Judgment, ECF 12, and Motion for Attorney's Fees and Costs, ECF 16. Despite Plaintiffs filing their Complaint, ECF 1, on April 28, 2023, Defendant has yet to appear in this case. On September 13, 2023, the Clerk of this Court entered default against Defendant, ECF 10, and on January 5, 2024, Plaintiffs filed their Motion for Default Judgment, ECF 12. For the following reasons, Plaintiffs' Motion for Default Judgment, ECF 12, is GRANTED and Plaintiffs' Motion for Attorney's Fees and Costs, ECF 16, is GRANTED.

## BACKGROUND

The following background is taken from allegations in Plaintiffs' Complaint, ECF 1.[1] Plaintiffs are several pension and welfare benefit plans established under § 302 of the Labor Management Relations Act, 29 U.S.C. § 186(c): Northwest Bricklayers Pension Trust Fund, Bricklayers International Pension Fund, Masonry Welfare Trust Fund, Apprentice and Journeyman Training Trust Fund, Masonry Vacation Trust Fund, and various other funds (collectively, the "Funds"). Complaint, ECF 1 ¶ 2. The Funds accept and administer

---

[1] Upon default, this Court accepts all well-pleaded factual allegations of the complaint as true, except those relating to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam). The court, however, does not accept as admitted legal conclusions or facts that are not well-pleaded. *DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

contributions from employers to cover health and welfare, pension, vacation, apprenticeship, training, and related needs of employees and employers. *Id.*

On May 7, 2020, Defendant signed a Compliance Agreement with Local No. 1 ("Union"). *Id.* ¶ 5. The Compliance Agreement bound Defendant to the terms of the collective bargaining agreement and Trust Agreements for each Fund. *Id.* ¶ 7. Under these terms, Defendant agreed to pay contributions to the Funds for work performed by Defendant's employees under the Compliance Agreement. *Id.* The Trust Agreements require Defendant to submit remittance reports and contribution payments for the preceding month's covered work to each fund by the 15th day of the calendar month. *Id.*

Any late payments to the International Pension Fund, the International Masonry Institute, and the International Union funds annually accrue fifteen percent interest. *Id.* ¶ 8. Interest for late payments to all other Funds annually accrues at eighteen percent. *Id.* Late payments also incur liquidated damages: twenty percent for late payments to the International Pension Fund and the International Masonry Institute, and ten percent for all other funds. *Id.* ¶ 9. The trust agreements also permit Plaintiffs to recover reasonable attorney's fees and expenses related to collection efforts, including auditor fees. *Id.* ¶¶ 10, 21.

Plaintiffs performed an audit of the period July 1, 2020 to July 31, 2021, concluding that Defendant had failed to pay fringe benefits to the Funds totaling $88,069.47. *Id.* ¶ 15.

Plaintiffs filed their Complaint on April 28, 2023. Complaint, ECF 1. On July 28, 2023, Plaintiffs served Defendant through its registered agent with a copy of the Complaint and summons. Affidavit of Service, ECF 6. The deadline to appear or file an answer was August 18, 2023, and Defendant did not file any responsive pleadings or otherwise appear before the 21-day deadline. *See id*; Fed. R. Civ. P. 12(a)(1). On September 25, 2023, Plaintiffs moved for Entry of

Default, ECF 7. The Clerk entered Defendant's default under Federal Rule of Civil Procedure 55(a) on September 13, 2023. Clerk's Entry of Default, ECF 10. Plaintiffs then moved for Default Judgment on January 5, 2024. Motion for Default Judgment, ECF 12. On March 8, 2023, Plaintiffs amended the amount of damages requested and provided other evidence to support the new damages calculation. *See* Supplemental Motion and Memorandum Regarding Default Judgment, ECF 20; Declaration of Debbi Sand ("Sand Decl."), ECF 21. The same day, Plaintiffs also filed a Motion for Attorney's Fees and Costs, ECF 16.

## DISCUSSION

This Court grants Plaintiffs' Motion for Default Judgment, ECF 12, and grants Plaintiffs' Motion for Attorney's Fees and Costs, ECF 16. Section A explains that this Court has jurisdiction over this matter. Section B explains that Plaintiffs have satisfied Rule 55's procedural prerequisites to moving for default judgment. Section C explains that default judgment is appropriate here. Section D explains that Plaintiffs' requested damages are supported by evidence and are reasonable. And Section E explains that Plaintiffs' attorney's fees and costs are reasonable.

**A.  This Court Has Jurisdiction Over this Case and Defendant**

This Court is satisfied that it has personal jurisdiction over Defendant based on the facts in this record. A district court "has an affirmative duty" to determine whether it has subject matter jurisdiction and personal jurisdiction over the defendant before entering a default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court "may dismiss an action *sua sponte*" where personal jurisdiction does not exist. *Id.*

Plaintiffs have established personal jurisdiction. Personal service is normally effective only within the boundaries of the state in which the federal court sits; however, ERISA permits

nationwide service of process. *Cripps*, 980 F.2d at 1267; *see* 29 U.S.C. § 1132(e)(2). Here, Defendant's registered agent was properly served within the United States. Affidavit of Service, ECF 6. Accordingly, this Court possesses personal jurisdiction over Defendant according to § 1132(e)(2). *See also Schuett v. FedEx Corp. Ret. Appeals Comm.*, Case No. 15–cv–0189–PJH, 2015 WL 4484153, at *5 (N.D. Cal. July 22, 2015) ("[S]ervice on a defendant in an ERISA case anywhere in the United States is sufficient to establish personal jurisdiction" (citing *Cripps*, 980 F.2d at 1267)).

This Court is also satisfied that it has subject matter jurisdiction. Federal courts may hear suits that raise a federal question. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). Plaintiffs' Complaint contains a well-pleaded federal claim under ERISA. Complaint, ECF 1. Federal district courts generally have exclusive jurisdiction of ERISA claims. *See* 29 U.S.C. § 1132(e)(1). Thus, this Court has federal question jurisdiction over Plaintiffs' ERISA claim.

**B. Procedural Requirements**

Plaintiffs have satisfied the requirements of Local Rule 55 and Federal Rule of Civil Procedure 55. Plaintiffs requested and received the Clerk's entry of default. Motion for Entry of Default, ECF 7; Clerk's Entry of Default, ECF 10. Defendant is neither a minor nor incompetent. *See* Complaint, ECF 1. Defendant has not appeared personally or by a representative, so it is not entitled to written notice of the application for default judgment. Fed. R. Civ. P. 55(b); *see also Stephen Wurth Photography, Inc. v. Wetpaint.com, Inc.*, Case No. SA CV 16-2101-DOC (JDEx),

2018 WL 5266861, at *2 (C.D. Cal. Oct. 5, 2018) (determining plaintiffs' "procedural

compliance").

The relief granted in default judgment is limited to what is demanded in the pleadings.

Fed. R. Civ. P. 54(c). The remedies requested in this motion "are not different from and do not

exceed the relief prayed for in the Complaint." *Philip Morris USA Inc. v. Banh*, No. CV 03–4043

GAF (PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005); *see* Motion for Default

Judgment, ECF 12 at 10–12; Complaint, ECF 1 at 5–6 (Prayer for Relief).

Finding procedural compliance, this Court now turns to Plaintiffs' Motion for Default

Judgment.

## C.  Default Judgment under FRCP 55

After the entry of a defendant's default, a default judgment can be entered in either of

two ways. First, the clerk of the court must enter a default judgment if the plaintiff's claim "is for

a sum certain or a sum that can be made certain by computation . . . against a defendant who has

been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). A sum is certain when "no doubt

remains as to the amount to which a plaintiff is entitled as a result of the defendant's default."

*Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 929 (9th Cir. 2004)

(citing *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)).

Second, at its discretion, a court may enter a default judgment. *See* Fed. R. Civ. P.

55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has

identified seven factors to guide a district court's consideration of whether to enter a default

judgment ("*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action[,] (5) the possibility of
> a dispute concerning material facts[,] (6) whether the default was

due to excusable neglect, and (7) the strong policy underlying the
Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted). The "starting point,"
however, "is the general rule that default judgments are ordinarily disfavored." *Id*. at 1472.
Because Plaintiffs have moved this Court for default judgment, ECF 12 at 1, this Court will
analyze their motion under the discretionary standard of Rule 55(b)(2) and apply the *Eitel*
factors.

The *Eitel* factors weigh in favor of granting Plaintiffs' Motion for Default Judgment
based on violations of ERISA. Each factor is discussed in turn.

### a.  Factor 1: Prejudice to Plaintiff

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default
judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.
2002). Given Defendant's failure to cooperate in this lawsuit and Plaintiffs' lack of alternative
avenues of recovery, Plaintiffs will suffer prejudice if default judgment is not entered. This factor
weighs in favor of default judgment. *See Garcia v. Pacwest Contracting LLC*, Case No. 3:12-cv-
01930-SI, 2016 WL 526236, at *3 (D. Or. Feb. 9, 2016) (noting lack of "alternative means by
which to resolve their present claims" and finding this factor weighed in favor of default
judgment (citation omitted)).

### b.  Factors 2 and 3: Merits of Plaintiffs' Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors "require that a plaintiff state a claim on which [it] may
recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (internal quotation marks, citation, and original
brackets omitted); *see also Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D.

Wash. 2014) ("The second and third *Eitel* factors . . . are often analyzed together." (citation omitted)).

Plaintiffs have stated a claim under ERISA. ERISA authorizes actions by fiduciaries on behalf of benefit plans (like Plaintiffs) to enforce an employer's obligation to contribute to a multi-employer plan under the terms of the plan or a collective bargaining agreement. 29 U.S.C. § 1132(a)(3), (d)(1); 29 U.S.C. § 1145.

Plaintiffs' Complaint alleges that Defendant agreed to be bound by the collective bargaining agreement and applicable Trust Agreements, which require Defendant to pay contributions to the Funds. Complaint, ECF 1 ¶ 7. According to Plaintiffs, Defendant has failed to make the required payments to the Trust Funds. *Id.* ¶ 15. Thus, Plaintiffs have adequately pleaded that Defendant is liable under 29 U.S.C. § 1145 for delinquent contributions.

The second and third *Eitel* factors weigh in favor of granting default judgment for Plaintiffs' ERISA claim.[2]

### c. Factor 4: Sum of Money at Stake

The court must "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "[A] large sum of money at stake would disfavor default judgment." *J & J Sports Prods., Inc. v. Cardoze*, No. C 09–05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) (citing *Eitel*, 782 F.2d at 1472); *see also Eitel*, 782 F.2d at 1472 (noting three million dollars sought in damages as a factor weighing against granting default judgment). Plaintiffs seek damages of $143,771.12, the value of delinquent

---

[2] Although Plaintiff's Motion for Default Judgment, ECF 12, refers to "two claims," Plaintiffs have clarified that they are only asserting one claim for unpaid contributions under ERISA for each Plaintiff. Plaintiffs' Supplemental Memorandum Regarding Default Judgment, ECF 20 ¶ 1.

payments as well as interest, liquidated damages, and auditor fees. Sand Decl., ECF 21 ¶ 2. This Court does not find this sum to be so large as to "disfavor default judgment." *J & J Sports Prods.*, 2010 WL 2757106, at *5.

### d.   Factor 5: Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers whether a dispute of material facts is likely. "Where the [p]laintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low." *3M Co. v. Phx. Auto. Refinishing Co.*, CV 17–00649–RSWL–DTB, 2018 WL 1989536, at *5 (C.D. Cal. Apr. 25, 2018) (alteration in original) (citation omitted). Because Plaintiffs' Complaint is well-pleaded and Defendant has failed to timely respond to Plaintiffs' claims, this factor weighs in favor of default judgment.

### e.   Factor 6: Whether Default was Due to Excusable Neglect

This factor considers whether the defendant's default was due to excusable neglect. Because Defendant was properly served via corporate officer under Oregon law in August 2023, this factor favors default judgment. Affidavit of Service, ECF 6; Fed. R. Civ. P. 4(e)(1); *see Nat'l Photo Grp., LLC v. Pier Corp.*, Case No. SACV 13-1165-DOC (JPRx), 2014 WL 12576641, at *3 (C.D. Cal. Mar. 10, 2014); *3M Co.*, 2018 WL 1989536, at *5.

### f.   Factor 7: Strong Policy Preference for Decisions on the Merits

The seventh *Eitel* factor considers the strong policy preference in favor of decisions on the merits. However, "where a defendant's failure to appear 'makes decision on the merits impracticable, if not impossible,' entry of default judgment is warranted." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citing *PepsiCo*, 238 F. Supp. 2d at 1177); *see also 3M Co.*, 2018 WL 1989536, at *5. Such is the case here, as Defendant has

failed to appear, and also failed to respond to demands for payment by Plaintiffs. *See* Complaint, ECF 1.

Each *Eitel* factor weighs in favor of granting default, so this Court GRANTS default judgment against Defendant Broken Stone Masonry.

**D.  Damages**

As this Court does not accept allegations of damages as true, Plaintiffs must prove damages on a motion for default judgment. *See* Fed. R. Civ. P. 55(b)(2). An award of damages cannot be entered in a default judgment without a hearing "unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (citation omitted).

Upon entry of judgment in favor of a plan governed by ERISA, the Court must award the Trust Funds the following: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) the greater of (i) interest on the unpaid contributions or (ii) liquidated damages, not to exceed twenty percent of the unpaid contributions; and (4) reasonable attorney's fees and costs. *See* 29 U.S.C. § 1132(g)(2). The Ninth Circuit has held that award of these items is mandatory, not discretionary, where: (1) defendant was delinquent at the time the action was filed; (2) the court is entering a judgment against defendant; and (3) the plan provides for these awards. *Nw. Adm'rs, Inc. v. Albertson's, Inc.,* 104 F.3d 253, 257 (9th Cir. 1996) (citing *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.,* 875 F.2d 212, 215 (9th Cir. 1989)).

Plaintiffs have satisfied each of these elements and are entitled to an award under ERISA. First, Plaintiffs alleged delinquent contributions under the trust agreements in their Complaint. Complaint, ECF 1 ¶ 15. Second, this Court is entering default judgment against Defendant

Broken Stone Masonry. And third, each of the trust agreements allow for fringe benefit contributions, interest on unpaid contributions, liquidated damages for late or unpaid contributions, and auditor fees. *Id.* ¶¶ 8–10, 21; Declaration of Trudy Horn ("Horn Decl."), ECF 13, Ex. 1 at 5, 13, 23, 31 (permitting recovery of interest for delinquent contributions); *id.*, Ex. 1 at 6, 15, 24, 32 (permitting recovery of liquidated damages for delinquent contributions); *id.*, Ex. 2 at 3 (same); *id.*, Ex. 1 at 8, 17, 26, 34 (permitting recovery of audit fees to collect delinquent contributions); *id.*, Ex. 2 at 4 (same).

Plaintiffs ask for damages totaling $143,771.12. This amount includes delinquent contributions of $88,069.47; liquidated damages of $8,783.55; interest of $43,504.73; and audit fees of $3,413.37. Supplemental Motion and Memorandum Regarding Default Judgment, ECF 20 ¶ 2; Sand Decl., ECF 21 ¶ 2; Sand Decl., ECF 21, Ex. 1. The amount of interest represents the balance as of February 27, 2024, which continues to accrue at a rate of $40.50 per day until the past due contributions are paid. Sand Decl., ECF 21 ¶ 2. In support of their request for damages, Plaintiffs submitted a declaration from the Trust Auditor, Debbi Sand, along with summary tables from the auditor's working papers. *Id.*, Ex. 1. In her declaration, Ms. Sand attests that she performed the audit of Defendant's remittance reports, reviewed relevant records, and calculated the amounts due Plaintiffs as of February 27, 2024. *Id.* ¶ 2. Further, the auditor's working papers support the amount of damages Plaintiffs request. *See id.*, Ex. 1.

This Court finds that Plaintiffs have adequately identified the specific damages requested and provided sufficient documentation to meet its burden in establishing damages of $143,771.12 under ERISA. *See Plumbers & Pipefitters Nat'l Pension Fund v. Eldridge*, 232 F. App'x 680, 683 (9th Cir. 2007) (citing 29 U.S.C. § 1132(g)(2)); *see also Jones v. James Trading Co.*, No. 21-55896, 2023 WL 3882957, at *1 (9th Cir. June 8, 2023) ("Evidence of damages in

support of a request for default judgment may come in the form of declarations specifying how damages were computed." (citation omitted)).

### E.  Attorney's Fees and Costs

Plaintiffs also request attorney's fees and costs, which this Court grants. Motion for Attorney's Fees and Costs, ECF 16. The trust fund agreements binding Defendant allow for attorney's fees. Complaint, ECF 1 ¶ 20; Horn Decl., ECF 13, Ex. 1 at 8, 17, 26, 34 (permitting the collection of attorney's fees and audit fees in the event of delinquent contributions); *id.*, Ex. 2 at 4 (same). ERISA also mandates the award of reasonable attorney's fees and costs to a plan that obtains a judgment. 29 U.S.C. § 1132(g)(2)(D); *Operating Eng'rs Pension Tr. v. Reed*, 726 F.2d 513, 514 (9th Cir. 1984). The court reviews the requested fee award for reasonableness. *See Operating Eng'rs*, 726 F.2d at 514. To calculate reasonable attorney's fees, courts look to the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citation omitted). Similarly, the fee applicant has the burden of proving that the requested hourly rate is reasonable. *See Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

The hourly billing records presented by Plaintiffs are reasonable. Plaintiffs request attorney's fees for 13.6 hours of Attorney Bradley Middleton. Middleton Decl., ECF 18, Ex. A. In support of this request, Attorney Middleton submitted billing records detailing the time spent on individual tasks. *Id.* Although several of these tasks were before filing the complaint, the Ninth Circuit has explained that attorney's fee awards under ERISA may encompass pre-litigation activities directed toward filing the lawsuit. *See Dishman v. UNUM Life Ins. Co. of*

*Am.*, 269 F.3d 974, 987–88 (9th Cir. 2001). This Court has reviewed the billing records and finds that the requested hours are reasonable.

The hourly rate of Attorney Middleton is also reasonable. Plaintiffs request hourly rates of $165 for Attorney Middleton. Middleton Decl., ECF 18 ¶ 6.5. In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citation omitted). "This District considers the most recent Oregon State Bar Economic Survey ('OSB Survey') as its 'initial benchmark' in determining whether hourly billing rates are reasonable." *Bark v. Northrop*, 300 F.R.D. 486, 493 (D. Or. 2014) (citation omitted); *see also* LR 54-3(a) (noting in the "Practice Tip" that the OSB Survey is the initial benchmark). "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate." *Bark*, 300 F.R.D. at 493 (citation omitted). Attorneys may argue for higher rates based on inflation, specialty, or other factors. LR 54-3(a).

Plaintiffs have met their evidentiary burden. According to the Oregon State Bar, Mr. Middleton has practiced law since 1989, which indicates he has approximately 35 years of experience. *See* OSB Membership Directory—Mr. Bradley L Middleton, Oregon State Bar https://www.osbar.org/members/membersearch_display.asp?b=893114 (last visited Apr. 19, 2024). According to the OSB Survey, the median rate for attorneys practicing in the Portland

area with more than 30 years of experience is $425.[3] Mr. Middleton's rate is lower than the relevant median billable rate, accordingly, this Court finds that Mr. Middleton's proposed hourly rate of $165 is reasonable for the purposes of Plaintiff's Motion for Attorney's Fees, ECF 16. Accordingly, this Court awards $2,244 in attorney's fees.

Finally, Plaintiffs request $470 for costs related to filing and proof of service. Motion for Attorney's Fees and Costs, ECF 16; Bill of Costs, ECF 19. This Court finds that it is reasonable to award the $470 in costs requested by Plaintiffs.

## CONCLUSION

For the reasons stated above, this Court GRANTS Plaintiffs' Motion for Default Judgment, ECF 12, as amended by Plaintiffs' Supplemental Memorandum Regarding Default Judgment, ECF 20. This Court also GRANTS Plaintiffs' Motion for Attorney's Fees and Costs, ECF 16.

This Court ORDERS Defendant to pay (1) $88,069.47 in delinquent contributions; (2) $8,783.55 in liquidated damages; (3) $43,504.73 in accrued interest as of February 27, 2024; (4) additional accrued interest at the rate of $40.50 per day from February 28, 2024 until past due contributions are paid; (5) $3,413.37 in audit fees; and (6) $2,714 in attorney's fees and costs.

**IT IS SO ORDERED.**

DATED this 3rd day of May, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[3] Oregon State Bar, 2022 Economic Survey 43 tbl. 36 (Mar. 2023), https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf (last visited Apr. 19, 2024).

PAGE 14 – OPINION AND ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT